IN THE COURT OF CRIMINAL APPEALS


OF TEXAS






NO. AP-74,951






GUY LEN ALLEN, Appellant



v.



THE STATE OF TEXAS





ON DIRECT APPEAL


FROM TRAVIS COUNTY





 Johnson, J., filed a concurring opinion, joined by Price, J.



C O N C U R R I N G O P I N I O N


 

 By definition, a probability is the result of many observations of a defined reference group. 
For instance, after many observations are made and analyzed, we can say with some certainty that
one out of two marriages will fail or that seven of ten professional football players will retire because
of injury. What we cannot say with any certainty is which marriages will fail or which football
players will suffer career-ending injuries.

 If we mine the treasure trove of statistics that is major league baseball, we may discover that,
over a number of seasons, left-handed batters reached first base safely three times out of ten at-bats
when facing right-handed pitchers, but only two times out of ten at-bats when facing left-handed
pitchers. One hundred sixty-two games per team, times the number of left-handed batters, times 3
or so at-bats per game, times 30 teams, is a large number of observations of a defined reference
group, left-handed professional baseball players who bat. From such data, we may then reasonably
conclude that the probability of a left-handed batter reaching first base safely is 30% if facing a right-handed pitcher and 20% facing a lefty, but we cannot say where, when, or against which pitcher a
given batter will get his hits. Nor can we say that every left-handed batter will bat .300 against right-handed pitchers; we can state only that, over a season, the average for all left-handed batters will be
close to .300. 

 If we want to apply those probabilities to someone who does not play major league baseball
and also desire reliability, we can apply those probabilities only to those who are like the members
of the reference group, such as left-handed Japanese professional baseball players. If we try to apply
those probabilities to right-handed batters, sand-lot players, or minor-league players, any predictions
made are likely to be proven wrong.

 If we want to know the probability that an individual will engage in a certain behavior within
a given time frame, the only probability that can be accurately and truthfully stated must assume a
person who is like the members of the reference group on which the estimate of probability is based. 
By its very nature, probability cannot, and does not, exist based on one observation of a group of one,
nor can it be used to predict the behavior of a given individual. It is misleading to purport to be able
to state a probability that a given individual will act in a given way in the future. Therein lies the
difficulty with asking witnesses to testify about the probability that a given defendant will be a
danger in the future.

 A probability that a single individual will engage in a given behavior does not exist. The
probability that does exist is the likelihood that a person like that individual will engage in a given
behavior. For example, a psychiatrist may be asked to estimate the chances that a given mental
patient will harm himself or someone else within the next year. The questioner may ask for that
information in at least two ways, one of which provides valid information, the other of which
provides merely a guess. If the question asks the psychiatrist to state the probability that a given
individual will harm someone, any answer in terms of probability is meaningless; to make such an
answer reliable requires a working crystal ball. The proper and appropriate question asks the
psychiatrist to estimate the probability that a person like the given individual, that is, a person with
a similar mental history, will harm someone within the next year. That probability can be calculated
by reviewing large numbers of observations of mental patients with similar mental disorders. The
reliability of the estimate of probability increases as the number of observations increases. With
sufficient observations, an answer based on that probability may offer helpful information. Again,
we may be able to say that a given number of mental patients will harm someone in the next year,
but we still cannot say with any certainty which patients will comprise that number.

 The proceedings in capital trials are on much more stable ground if the future-dangerousness
witnesses are questioned about the probability of future violence by a person who is like the
defendant in, for example, background, criminal history, mental status, and demonstrated propensity
for violence against others. Sometimes it is clear that the witness is purporting to be able to predict
the future as to the individual on trial. (1) It may be that some witnesses are being asked the wrong
question and yet, basing the answer on their knowledge about many similar individuals, answering
the correct one. (2) The only way to be sure is to ask the question in the correct form.

 I concur in the judgment of the Court.

 


Filed: June 28, 2006.

Do Not Publish

1. See, e.g., Barefoot v. Estelle, 463 U.S. 880, 905 n.11 (1983)(without having examined Barefoot, Dr.
Grigson testified that there was a 100% probability that Barefoot would commit violent acts in the future). Dr.
Grigson may have been committing the common mistake of conflating probability and possibility. Probability does
not exist without large numbers of observation of a defined reference group. However, almost anything that does not
violate the laws of physics is at least theoretically possible. Possibility does not require numerous observations
because a single attempt may prove the theory. The basic question addressed is different. The question for
possibility is, can this event happen? The question for probability is, how often does this event happen?

 On the other hand, Dr. Grigson may have been asked the wrong question, but answered the correct one: he
stated that he was "'100% sure' that an individual with the characteristics of the one in the hypothetical would
commit acts of violence in the future . . .." Id. (Emphasis added.) Even if that were the case, he stretched the limits
of predictability; "in response to Dr. Grigson's assertion that he was '100% sure' that an individual with the
characteristics of the one in the hypothetical would commit acts of violence in the future, Dr. Fason testified at the
habeas hearing that if a doctor claimed to be 100% sure of something without examining the patient, 'we would kick
him off the staff of the hospital for his arrogance.'" Id. 
2. "[T]he State called two expert witnesses, Dr. George Parker, a psychologist, and Dr. Richard Koons, a
psychiatrist. Both of these doctors agreed that accurate predictions of future dangerousness can be made if enough
information is provided; furthermore, they both deemed it highly likely that an individual fitting the characteristics
of the one in the Barefoot hypothetical would commit future acts of violence." Barefoot at 901. (Emphasis added.)